UNITED STATES *v.* JAEHNE (No. 1881).[1]

PRACTICE AND PROCEDURE BEFORE THE UNITED STATES BOARD OF GENERAL APPRAISERS.

Under Rule VII of the "Rules of practice and procedure before the Board of United States General Appraisers" the Government, as a party to an appeal to the board involving the classification of merchandise entered at San Francisco was entitled to a hearing at San Francisco. The action of the board in holding the final hearing in New York, over the protest of the Government and despite the Government's request for a hearing in San Francisco, constituted reversible error.

United States Court of Customs Appeals, March 6, 1918.

APPEAL from Board of United States General Appraisers, Abstract 41323.

[Reversed.]

*Bert Hanson,* Assistant Attorney General, for the United States.
Submitted on record by appellee.

[Oral argument Feb. 13, 1918, by Mr Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal presents a question of practice. The Government alleges that the Board of General Appraisers erroneously refused to

------

[1] T. D. 37585 (34 Treas. Dec., 278).

place the present case upon the proper calendar for trial, and thereby denied the Government an opportunity to submit its evidence upon the issue.

The merchandise is an earthenware bowl which was imported from China and was entered at the port of San Francisco.

The importer demanded free admission for the bowl, upon the claim that it was a work of art produced more than 100 years prior to its importation, and therefore was free of duty under paragraph 656 of the tariff act of 1913.

The collector held that the bowl was not a genuine antique, but an imitation only, and was less than 100 years old. He therefore assessed it with duty at the rate of 40 per cent ad valorem as ornamented earthenware under paragraph 79 of the act.

The importer protested against the assessment and the board sustained the protest. From this ruling the Government appeals.

It is apparent from the foregoing statement that the underlying issue in the case was one of fact, namely, the question of the bowl's antiquity. It was therefore essential that each party should have the opportunity under the board's rules to submit evidence in support of its claims upon the facts. The Government, however, maintains that it was denied this right by the board and this claim, as above stated, presents the only question now upon appeal.

As has been stated, the importation was entered at the port of San Francisco, and the entry was liquidated by the collector of customs at that port. Accordingly, under Rule VII of the "Rules of practice and procedure before the Board of United States General Appraisers," the protest should have been placed upon the calendar at San Francisco for trial. The rule reads as follows:

Rule VII. Regular calendars will be called at the ports of Baltimore, Boston, Chicago, Los Angeles, New Orleans, Philadelphia, Portland (Oreg.), St. Louis, St. Paul, San Francisco, and Seattle, and at such other ports as in the judgment of the president of the board occasion may require.

The president of the board will prepare and have promulgated for each calendar year a list of ports at which regular hearings in classification and reappraisement cases will be held. All such cases, unless otherwise ordered, will be placed on the calendar of the port nearest to the port of entry; but the president of the board may order special hearings in classification and reappraisement cases at ports other than New York and those ports on the regular calendar when occasion requires.

No order appears in the record changing the procedure thus provided for. Nevertheless, so far as the record discloses, the protest was never in fact placed upon the calendar at San Francisco, but testimony was taken by the board for the first and only time in the case at the port of New York. It is stated by the Government that the case was not upon a regular calendar there upon the day of hearing, and that a special hearing was held there for the taking of testimony. The record does not state distinctly upon whose appli-

cation this action was taken; nevertheless it may be noted that at the hearing in New York the importer called seven witnesses for examination, whereas the Government called none; and furthermore that the representatives of the Government constantly insisted that after the hearing at New York the case should be placed upon the docket at San Francisco, in order that the Government's testimony might there be introduced.

This request was first preferred by the local appraiser at the port of San Francisco, who in his answer to the protest made the following statement:

> The so-called flower pot in question is a lily bowl which is claimed to have been made in the Sung period of Chinese manufacture, about 900 years ago. After a careful examination and thorough investigation by this office the conclusion was arrived at that this bowl was an imitation of Sung manufacture and was not over 100 years old. As this is the second attempt to introduce this article into the United States as an antique it is requested that after a hearing has been had at New York the case be transferred to this port for the submission of evidence here on behalf of the Government.

A similar request was presented to the board at the hearing in New York, when the Government, before any testimony had been taken, openly requested that after the importer had put in his proofs the case should be placed upon the docket at San Francisco. It also appears that the board then and there announced that this request would be granted. The following extract from the record covers this point:

> Mr. MULVANEY. The Government requests that the case be placed on the San Francisco docket after the importer has put in his proof, this being a San Francisco importation.
> Mr. WARD. We object to that.
> General Appraiser HAY. Under the rule we will have to send the case back there. Objection overruled.

It furthermore appears that at the close of the testimony at New York the importer submitted the case on his part, whereupon the Government repeated its request that the case should be placed upon the docket at San Francisco "for the present." Thereupon the board announced that the case was "submitted with the understanding that the submission will be set aside if at some time before autumn, during the next two months," the Government should so request.

The following extract from the record presents this incident:

> Mr. MULVANEY. The Government requests that the case be placed on the San Francisco docket for the present.
> General Appraiser HAY. The case is submitted with the understanding that the submission will be set aside if at some time before autumn, during the next two months, counsel for the Government should ask that the submission be set aside and the case sent to San Francisco for further testimony.
> The bowl shown to the witnesses is withdrawn by counsel for the importer by agreement with counsel for the Government and the permission of the board.

The date of the hearing at New York was June 27, 1917, and no action was taken by the Government before the board within the two months next succeeding. But on September 20, 1917, less than a month after the expiration of that period, and before the board had decided the case, the Government presented a written application duly verified requesting that the case should be placed for hearing upon the docket at San Francisco, in order that the Government might there submit its testimony in support of its claim. In the application the statement was made that a letter had been mailed on June 27 by the Assistant Attorney General at New York to the appraiser at San Francisco asking his desires in the matter, which letter remained unanswered until early in September because of the absence on leave of the examiner who had first passed upon the importation.

This application was resisted by the importer, who filed an answer thereto setting out his reasons against the docketing of the case at San Francisco. He maintained that the antiquity of the imported bowl could only be ascertained from the testimony of experts in that particular line of art, and that the supremacy of New York over San Francisco in providing experts in the art is so well established that judicial notice should be taken of the fact. He furthermore stated that his own good faith in the transaction had not been questioned by the Government, and that the testimony of the greatest experts in the country upon such subjects had been presented to the board in proof of the fact that the bowl belonged to the Sung dynasty and was therefore almost a thousand years old. In general terms he denied the Government's contention that "there was no order in the record transferring the case to New York nor any request even from the importer" therefor, and averred that this claim of the Government is at variance with the statement of the appraiser at San Francisco, and of the Government's later statement that "the bowl was transported to New York at the importer's special request." The importer also averred in the answer that "the transportation of such an expensive piece of porcelain from New York to San Francisco and subsequent return is fraught with such risk that it is contended the Government's request should be denied without there is some good and sufficient reason apparent, and that the mere statement of the appraiser that he believes he can produce evidence is not sufficient in view of the overwhelming testimony of qualified experts produced at the hearing."

On September 27 the board overruled the Government's application, and on October 17 decided the case by sustaining the protest upon the testimony then upon the record.

It may be repeated that the record as thus concluded contained only the testimony which the importer had submitted, and none on behalf of the Government.

It seems evident from the foregoing statements that the present difficulty arose at the close of the hearing at New York on June 27, when the Government repeated its request that the case should be placed for trial upon the docket at San Francisco.

In passing upon this request the board manifestly took the position that the case had already been finally submitted to them, and that no further testimony could be introduced therein unless this submission should first be set aside. Accordingly they allowed the Government a limited period of time within which to make a special application for an order setting the submission aside and sending the case to San Francisco for further trial.

We think that this was an erroneous interpretation of the record upon the part of the board, and that the error practically resulted in depriving the Government of its day in court. The Government concededly was entitled under the rules to a trial of the case at San Francisco, where the merchandise had been entered and assessed, and this right was never either directly or impliedly waived by the Government, but was consistently maintained by its representatives throughout all the proceedings set out in the record. While the record offers no clear explanation of the fact that a hearing was had in the first instance at New York instead of at San Francisco, yet we think that the unmistakable inference is that this was had only for the convenient taking of testimony there by the importer, and that it was not intended or understood by the Government to be a final submission of the case to the board for decision. It does not appear from the record that the Government at any time or in any manner receded from this position, or waived its right to the docketing of the case at San Francisco, nor that any fact intervened which should estop it from insisting upon that right. It follows, therefore, that the Government was prejudiced in its rights when the hearing of testimony at New York was converted by the board's procedure into a final trial of the case, and without any default on its part it was deprived of the opportunity of calling its witnesses at San Francisco.

The arguments presented by the importer in his answer as above set out do not seem to be sufficient to justify the board's ruling. Even granting that the most authoritative experts upon the subject are to be found in New York and that the testimony in the record in behalf of the importer's claim is very persuasive, and that the risk and inconvenience of transporting the bowl to and from San Francisco are substantial, yet nevertheless the Government should not be denied its day in court, and this result would follow in event of a final decision of the case upon the testimony taken in New York only.

The present question is analogous to that presented to this court in the case of United States *v.* Rothschild & Co. (3 Ct. Cust. Appls., 251; T. D. 32566).

The decision of the board is therefore reversed, and the case is remanded for further proceedings in accordance with the foregoing decision.

*Reversed.*